UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WEEKS MARINE, INC.** | **CIVIL ACTION** |
| **versus** | **NO. 04-0009** |
| **DESMOND BOWMAN** | **SECTION "C" (3)** |

## OPINION[1]

This matter was tried before the Court without a jury on May 25, 2006, and taken under advisement. In the previous trial on liability, the issues of maintenance and cure and attorney's fees were decided in favor of Defendant/counter-claim Plaintiff Desmond Bowman and the issues of negligence and unseaworthiness were decided in favor of Plaintiff/counter-claim Defendant Weeks Marine ("Weeks") (Rec. Doc. 47). Thus, all that remains to be decided is the issue of damages. Bowman contends that he is entitled to the following: 1) maintenance from January 4, 2005 through August 25, 2005, 2) lost wages from January 2004 through December 2005, 3) compensatory damages for the mental anguish Bowman suffered as a result of Weeks's failure to provide maintenance and cure from January 2004 through November 2004, 4)

---

[1] Jennifer Griep, a third-year law student at Tulane Law School, assisted with the research and preparation of this decision.

compensatory damages for Weeks's failure to provide maintenance and cure from January 4, 2005 through August 25, 2005, and 5) reasonable attorney's fees. Having considered the testimony and evidence adduced at trial, the record, and the law, the Court finds Bowman is entitled to maintenance from January 4, 2005 through August 25, 2005, compensatory damages for the mental anguish Bowman suffered as a result of Weeks's failure to pay maintenance and cure from January 2004 through November 2004, compensatory damages for Weeks's failure to pay maintenance and prompter cure from January 4, 2005 through August 25, 2005, and reasonable attorney's fees. The request for lost wages from January 2004 through December 2005, however, is denied.

The facts leading to the dispute are set forth in the Court's opinion following the liability phase of this proceeding (Rec. Doc. 47) and are not repeated here.

I.      **Maintenance from January 4, 2005 through August 25, 2005**

Under general maritime law, a seaman is entitled to maintenance and cure for injuries that occur in the service of the vessel until he reaches maximum medical improvement. Breese v. AWI, Inc., 823 F.2d 100, 104-05 (5th Cir. 1987). At the trial on liability in November, 2004, the Court concluded that Bowman's injuries occurred while in the service of Weeks and that Weeks was therefore obligated to pay Bowman maintenance and cure for the injuries to his shoulder and back. (Rec. Doc. 47, pg. 8). Despite this order, on January 4, 2005, less than two months later, Weeks terminated maintenance payments to Bowman. (Rec. Doc. 79, pg. 3). Weeks justified the termination by claiming Bowman failed to mitigate his damages by failing to undergo the recommended surgery. Id. This issue arose out of Dr. Seltzer's (Bowman's treating physician) request for prepayment or guarantee of his fee for surgery in the amount of $3700.00. Id. Weeks claimed it had no duty to prepay or guarantee payment to Dr. Seltzer and concluded

that if Bowman or his attorney's would not provide prepayment to Dr. Seltzer, that Bowman was failing to mitigate his damages and therefore forfeited his right to maintenance and cure. Id.

In Guevara v. Maritime Overseas Corporation, the Fifth Circuit noted that an employer's obligation to pay maintenance and cure requires the employer to take "all reasonable steps to ensure that a seaman who is injured or ill receives proper care and treatment." 59 F.3d 1496, 1500 (5th Cir. 1995). In Sullivan v. Tropical Tuna, the United States District Court for the District of Massachusetts noted that "an injured seaman often will be unable to obtain necessary medical treatment unless he can…demonstrate the ability to pay." 963 F. Supp 42, 45 (D. Mass. 1997). As a result, in that case the court concluded that a shipowner's duty to pay maintenance and cure requires him to guarantee payment prior to the seaman's surgery. Id. In Gorum v. Ensco Offshore Company, the Eastern District of Louisiana concluded based on Guevara and Sullivan that the "cure obligation involves taking reasonable steps to assure that [the seaman] receives the recommended surgery, including providing assurance of payment in advance if that is necessary." Gorum, 2002 U.S. Dist. LEXIS 21992, at * 29. Thus, the Court finds that Weeks had a duty to prepay or guarantee Dr. Seltzer a reasonable fee.

More importantly, for this issue of maintenance, given the company's refusal to prepay, Bowman cannot be said to have failed to mitigate his damages and thereby forfeit his right to maintenance by delaying surgery. Even if Weeks disputed Dr. Seltzer's fee ("cure"), it was unreasonable for Weeks to terminate maintenance. Generally speaking, if a seaman willfully rejects recommended medical aid, he forfeits his right to maintenance and cure. Coulter v. Ingram Pipeline, Inc., 511 F.2d 735, 737 (5th Cir. 1975). However, exceptions exist and the question is "whether there existed any extenuating circumstances which made the appellant's failure to follow the prescribed regimen either reasonable or something less than a willful

3

rejection." Id. at 737-38. Such circumstances exist here. Bowman was prepared to receive the recommended surgery when Weeks refused to pay for it. Weeks then terminated Bowman's maintenance which Bowman testified created substantial economic uncertainty. Therefore, Bowman's choice to delay surgery until the situation could be resolved with Weeks was reasonable. Weeks's consistently unreasonable and recalcitrant conduct throughout this entire case more than justified Bowman's hesitation. This finding is bolstered by the fact that once an alternative doctor to perform Bowman's surgery was agreed to by the parties on April 7, 2005, Bowman immediately met with him and subsequently received the surgery upon Weeks's approval. (Joint Bench Book, exhibit 14).

This Court finds that Weeks's termination of maintenance was unreasonable and maintenance payments are owed from January 4, 2005 through August 25, 2005.[2]

## II.    Lost Wages from January 2004 through December 2005

In addition to the maintenance payments, Bowman contends that he is entitled to lost wages from January 2004 through December 2005 in the approximate amount of $80,656. (Rec. Doc. 79, pg. 12).

In general, seamen have three remedies available to them under general maritime law and statute: an action for maintenance and cure, an action for negligence, and an action for unseaworthiness. See, e.g., The Osceola, 189 U.S. 158 (1903). In the instant case, Bowman's claims of negligence and unseaworthiness were denied and only his claim for maintenance and cure was granted. (Rec. Doc 47, pg. 1).

Maintenance and cure payments are typically made up of three components: maintenance, cure, and wages. The Osceola, 189 U.S. 158 (1903), See also Flores v. Carnival

---

[2] The Court considers the issue of the amount of Dr. Seltzer's fee to be a "red herring" insofar as maintenance is concerned. The amount of his fee is relevant to the "cure" aspect of Weeks's obligation but not maintenance. It was patently unreasonable for Weeks to terminate maintenance while the dispute over cure was ongoing.

4

Cruise Lines, 47 F.3d 1120, 1122 (11th Cir. 1995). These wages include only those that the seaman would have earned during the remainder of the voyage or, in the alternative, those owed until the contract of employment terminates. See Farrell v. United States, 336 U.S. 511 (1949); Archer v. Trans/Am. Servs., Ltd., 834 F.2d 1570 (11th Cir. 1988).

Bowman was granted maintenance and cure by the Court and it is undisputed that maintenance was paid at the rate of $20.00 per day. (Rec. Doc. 79, pg. 11). In the absence of liability on the part of Weeks, (i.e. the lack of negligence or unseaworthiness), Bowman is not able to recover additional lost wages on these grounds. See Crooks v. United States, 459 F.2d 631, 633 (9th Cir. 1972).

### III.  Compensatory Damages

Bowman contends that he is entitled to compensatory damages for two distinct harms: mental anguish for Weeks's failure to initially pay maintenance and cure from January 2004 through November 2004, and damages associated with Weeks's failure to pay maintenance and prompter cure from January 4, 2005 through August 25, 2005.

### A.  Compensatory Damages for Mental Anguish for Initial Failure to Pay Maintenance and Cure (January 2004 through November 2004)

Bowman contends that he is entitled to mental anguish for Weeks's failure to pay maintenance and cure during the initial phase of this proceeding, specifically from January 2004 until the trial commenced in November 2004.

It has been recognized that when a seaman is injured he is "entitled to redress for his physical injury, including the effects thereof, such as pain, suffering, mental anguish, discomfort, and inconvenience." Pfeifer v. Jones & Laughlin Steel Corporation, 678 F.2d 453, 460 (3d Cir. 1982), rev'd on other grounds, 462 U.S. 523 (1983). In Schwartz v. Neches-Gulf Marine, Inc.,

the court recognized several cases in which the Fifth Circuit has allowed damages for claims of pain and suffering and mental anguish.  67 F. Supp. 2d 698, 701-02 (S.D. Tex. 1999).  In <u>Boyle v. Pool Offshore Company</u>, the Fifth Circuit affirmed an award of damages that included damages for pain and suffering and mental anguish.  893 F.2d 713, 718-19 (5th Cir. 1990).

In the instant case, the Court previously found Weeks's behavior delaying maintenance and cure payments, in spite of mounting medical evidence, not only unreasonable but arbitrary and capricious.  (Rec. Doc. 47, pg. 8).  Furthermore, Bowman testified that Weeks's refusal to pay maintenance and cure, coupled with his inability to work because of his injured shoulder made him unable to support his family.

As stated in <u>Pfeifer</u>, an injured seaman is entitled to redress for his physical injuries and its attendant consequences.  678 F.2d at 460.  As a result of Weeks's unreasonable delay in providing Bowman with the maintenance and cure to which he was entitled, he suffered unnecessary physical and mental pain and suffering.  Thus, Bowman is entitled to compensatory damages for pain and suffering and mental anguish from January 2004 until November 2004.

**B.     Compensatory Damages for the Failure to Pay Maintenance and Prompter Cure (January 4, 2005 through August 25, 2005)**

Bowman also contends that he is entitled to compensatory damages for Weeks's failure to approve his surgery and the subsequent delay in receiving the procedure, as well as the termination of his maintenance, from January 4, 2005 through August 25, 2005.  (Rec. Doc. 79, pg. 11-12).

If an employer unreasonably denies maintenance and cure, the seaman is entitled to compensatory damages.  <u>Morales v. Garijak</u>, 829 F.2d 1355, 1358 (5th Cir. 1987).

In <u>Sullivan v. Tropical Tuna</u>, the District Court for the District of Massachusetts,

6

applying general maritime law, found that Tropical Tuna's one month delay in authorizing payment for the seaman's surgery constituted a willful failure to pay cure. 963 F. Supp at 45. The court awarded Sullivan damages for the physical and mental pain and suffering that he suffered as a result of the delay. Id. The court stated that upon receiving the claim for maintenance and cure, Tropical Tuna had the right to investigate and corroborate the claim, but that one month was far longer than they needed to do this and that this breach was therefore unreasonable and willful. Id.

In the instant case it was clear from the initial proceeding that there was medical evidence that Bowman needed further medical treatment (i.e. the surgery) and the Court ordered maintenance and cure be provided to Bowman for his injuries. (Rec. Doc. 47, pg. 8). As noted above, it was Weeks's responsibility to ensure that Bowman received the medical attention needed even if they were required to prepay or guarantee his surgery fee to do so. While the Court does not fault Weeks for questioning Dr. Seltzer's fee, it was not until April 7, 2005, more than three months after they unreasonably ceased maintenance payments, that the parties reached an agreement that Dr. Bostick would treat Bowman. (Rec. Doc. 79, pg. 3, 7). Even after this agreement was reached, Weeks did not officially approve the surgery with Dr. Bostick until July 20, 2005, more than six months after they ceased maintenance payments. (Joint Bench Book, exhibit 10). Surgery did not commence until August 26, 2005, more than seven months after the surgery was originally to be performed. (Rec. Doc. 79, pg. 4). Maintenance payments did not resume until the surgery was performed. Id.

This was a willful and unreasonable delay.[3] Weeks had already conducted an

---

[3] The willfulness and unreasonableness is underscored by Weeks's attempt to negatively influence Dr. Bostick's willingness to perform the surgery by sending him surveillance tapes of Bowman, and by their half-hearted commitment to pay his fees.

investigation into Bowman's injuries and this Court had already ordered Weeks to pay maintenance and cure for these injuries. As in Sullivan, there was sufficient evidence Bowman's injury occurred on the vessel, there was medical evidence that Bowman needed the surgery and still Weeks unreasonably delayed this surgery for more than seven months.

Weeks unreasonably withheld Bowman's maintenance and cure and is therefore liable to Bowman for compensatory damages for this failure.

At the time of the damages proceedings, Bowman was thirty years old. He testified that he had worked as a deckhand for various maritime companies for most of his working life prior to his injury. He was pleased to be hired by Weeks Marine because it was a big company and held "good opportunities." He intended to stay with Weeks Marine indefinitely.

At the time of his injury, Bowman was the primary financial support for himself, his girlfriend of six years and his daughter. Subsequent to his injury, he had another child which he testified was unplanned.

With respect to his shoulder injury, Bowman testified that he "wasn't able to do nothing" because his shoulder hurt so much. Weeks Marine presented no evidence or argument to the contrary. As already noted above, the Court finds that Bowman was ready to have surgery as soon as it could be approved and none of the delay in "cure" is attributable to him.

Weeks Marine itself acknowledged that had Bowman had surgery when it was first proposed – in March, 2004, he would have been at maximum medical improvement by July, 2004. (Rec. Doc. 83, pg. 3). Bowman did not have surgery then as Weeks Marine was refusing him both maintenance and cure at that time.

Bowman testified that during the time he was unable to work his girlfriend, Tracy, supported the family. When asked how that made him feel, he said "I feel bad. I feel like a half

man." Since returning to work, he has resumed supporting his family and acknowledged feeling "a lot better."

Bowman was found to be recovered from surgery in December, 2005 and he returned to the workforce in January. He works in construction as a sheetrock finisher. He also testified at trial that he has not applied to work for a towing company or a tug boat company since his medical release five month before.

The Court concludes that Bowman's suffered significant physical pain from his shoulder injury since July, 2004. This pain was severe enough to preclude gainful employment. This pain was also unnecessary. Had Weeks Marine provided cure in March, 2004, when Bowman's surgery was first recommended, he would presumably have reached a level of minimum pain by July, 2004, and returned to the workforce.

Bowman's mental anguish was directly associated with his inability to work and support his family. As noted in the Court's earlier ruling in 2004, the Court finds Bowman to be a credible witness, a hard worker who would work through injuries is possible.

In light of the above, the Court finds that an appropriate compensation for Bowman's pain and suffering, which prevented him from employment, and his mental anguish caused by his inability to financially support his family, is the amount of net earnings he would have made had he had the surgery in March, 2004. The beginning date of such earnings is July 1, 2004 and the end date, August 25, 2005, the date of his surgery.

This assessment of net earnings shall be based on wages as a sheetrock finisher, not a maritime deckhand. Bowman has chosen not to return to the maritime field even though apparently able to do so.

**IV.     Attorney's Fees**

Bowman contends that he is entitled to attorney's fees for Weeks's unreasonable and arbitrary and capricious behavior subsequent to January 4, 2005 pertaining to its failure to pay maintenance and cure (Rec. Doc. 79, pg. 11-12).

If a shipowner "in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault, he will be liable for punitive damages and attorney's fees."  Morales, 829 F.2d at 1358.  The court in Morales noted that this is an escalating scale of liability and that if the employer acts unreasonably the seaman is entitled to compensatory damages.  Id.  If the employer is not only unreasonable but also acts callously they are liable for punitive damages and attorney's fees as well.[4]  Id.

Weeks was put on notice in the liability trial that their behavior delaying Bowman's maintenance and cure was not only unreasonable but also arbitrary and capricious.  (Rec. Doc. 47, pg. 8).  As a result, the Court found it fit to award attorney's fees for their failure to pay maintenance and cure, in addition to maintenance and cure itself.  (Rec. Doc. 47, pg. 8).

Subsequently, less than two months later Weeks ceased paying Bowman maintenance again on January 4, 2005 and refused to pay the fee of the treating physician he had selected. (Rec. Doc. 79, pg. 3).  It was not until April 7, 2005 that the parties were able to agree to an alternative physician, Dr. Bostick, to perform the surgery.  (Rec. Doc. 79, pg. 3, 7).  Although Bowman immediately saw Dr. Bostick on April 21, 2005 and Dr. Bostick recommended surgery and physical therapy for Bowman, Weeks continued to delay.  (Joint Bench Book Exhibit 14). It was during this period that Weeks's sent surveillance tapes to Dr. Bostick obviously intended to dissuade him from his opinion that surgery was needed.  It was not until July 20, 2005 that

---

[4] Punitive damages are no long available.  See Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir. 1995) (en banc) cert. denied, 116 S.Ct. 706 (1996).

Weeks sent a letter expressing their intent to guarantee any surgery performed on Bowman by Dr. Bostick and even that was fraught with conditions. (Joint Bench Book exhibit 10). As a result, there was over a seven-month delay in commencing the surgery, during which no maintenance and cure payments were made.

Given the initial Court finding of arbitrary and capricious behavior, Weeks's continuation of such behavior in conjunction with their unreasonable ceasing of maintenance and cure, the Court finds that Weeks has acted in an arbitrary and capricious manner and is liable for attorney's fees.

Accordingly,

**IT IS ORDERED** that judgment for damages be entered in the favor of Desmond Bowman for:

1) Maintenance from January 2005 through August 2005;

2) Compensatory damages equivalent to the net wages Bowman would have earned as a sheetrock finisher from July 1, 2004 to August 25, 2005.

3) Attorney's fees.

With respect to maintenance and compensatory damages, the parties shall submit a joint judgment to the Court within 20 days specifying the amount. If the parties cannot agree, each side shall submit motions to the Court addressing the amount of damages within 20 days.

With respect to attorney's fees, the prevailing party shall file a motion before the Magistrate Judge to determine the amount.

New Orleans, Louisiana, this __28th__ day of _____July_____, 2006.

                                              HELEN G. BERRIGAN
                                              UNITED STATES DISTRICT JUDGE